### PIERCE *v.* TURNER.

---

The act of assembly of Virginia,' which makes 'unrecorded deeds void as to *creditors*, and *subsequent purchasers*, means creditors of, and subsequent purchasers from, *the grantor.*

A marriage settlement, conveying the wife's land and slaves to trustees, by a deed, to which the husband was a party, although not recorded, protects the property from the creditors of the husband.

ERROR to the circuit court of the district of Columbia, sitting at Alexandria, in an action of debt brought by Pierce against Rebecca Turner, charging her as executrix in her own wrong of her late husband, Charles Turner, deceased.

Upon the issue of *never executrix*, the jury found a special verdict, stating in substance the following case :

On the 14th of February, 1798, the defendant, by the name of Rebecca Kenner, being a *feme sole*, and seised and possessed, in her own right, of certain land and slaves, conveyed the same by deed, in consideration of an intended marriage between herself and Charles Turner, to trustees, to be held in trust for the use of herself until the marriage should be solemnized, and from and after the solemnization thereof to the use of herself and the said Charles Turner, and the *longest liver of them*, and from and after their deaths, to the use of *her heirs,* The deed purports to be an indenture tripartite, in which Charles Turner is named as the second party, and as such he duly executes the deed;

he does not, however, make any settlement of his own property upon his intended wife, but appears to be made a party merely for the purpose of testifying his privity and consent.

PIERCE
v.
TURNER.

About four months after the execution of the deed, two of the three subscribing witnesses proved the execution, before the county court of Fairfax, where all the parties inhabited. That probat-was duly certified by the clerk under direction of the court. But the deed purporting to be a conveyance of land as well as slaves, and one of the subscribing witnesses, soon after the execution of it, having left the United States, and never having returned, the deed was not fully admitted to record, but remained in the clerk's office under the certificate of probat before stated, until the 1st of September, 1807, when the county court, upon proof of the absence of the third subscribing witness, and of his hand-writing, admitted the deed to record; all which is certified by the recording clerk, and found by the special verdict.

Soon after the execution of the deed, and in the same month, (February, 1798,) the contemplated marriage took place; whereupon the trustees put Turner into possession of the land and *slaves*, and he continued possessed of the same, with the knowledge and approbation of the trustees, till his death, which happened some time in the month of December, 1802, less than five years from the time of his marriage, and of his first coming into possession of the property.

Turner and his wife resided in Alexandria from the time of their marriage till the autumn of 1801, when they removed into the county of Northumberland, in the state of Virginia, taking the slaves with them by consent of the trustees; they continued to reside there, upon the land in the deed mentioned, on which the slaves were kept, till his death, in December, 1802. Upon his death she remained in possession both of the land and slaves, claiming exclusive property in the same, and to

hold possession of the same with the privity and approbation of the trustees, whose privity and approbation are expressly found. In the autumn of 1803, the defendant removed back to Alexandria, in the district of Columbia, and brought with her a part of the slaves, (of value sufficient to satisfy the plaintiff's debt,) and has ever since resided in Alexandria, and there used the slaves so brought with her.

Three months after Turner's death, and seven months before the defendant removed from Northumberland back to Alexandria, the county court of Northumberland, finding that no person would apply for administration of the intestate's estate, committed the administration to the sheriff of the county, under a particular statute of Virginia. The sheriff returned an inventory of assets apprized at 4,631 dollars and 72 cents, which was distributed in due proportions among the creditors, under the special direction of the court. But the plaintiff put in no claim, and, not being on the list of creditors reported to the court, received no part of the sum so distributed. None of the slaves conveyed by the said deed were meddled with in the course of the sheriff's administration, nor included in the inventory and appraisement, although they were all then in the county, and some of them have continued in the county ever since Turner's death. It is found that Turner died insolvent, unless the said slaves are charged with his debts.

By the 4th section of the act of assembly of Virginia, entitled " An act for regulating conveyances," it is enacted, " that all conveyances of lands," " and all deeds of settlement upon marriage wherein either lands, slaves, money or other personal thing shall be settled," " and all deeds of trust and mortgages whatsoever," " shall be void as to all *creditors and subsequent purchasers.* unless they shall be acknowledged, or proved and recorded according to the directions of this act; but the same, as between the parties and their heirs, shall nevertheless be valid and binding."

The deed in question never was proved or acknowledged and recorded according to the directions of the act; and the question was, whether it was void *as to the creditors of the husband*, so as to charge the widow as his executrix in her own wrong.

PIERCE
v.
TURNER.

The opinion of the court below was, that the deed was good and effectual to prevent the property vesting in the husband by virtue of the marriage, and consequently was never liable for *his* debts. That at the time of the marriage no *legal* estate in the slaves was vested in the wife, and therefore nothing was transferred to the husband by the marriage.

*E. J. Lee*, for the plaintiff in error.

By marriage all the personal estate of the wife becomes the absolute property of the husband. The operation of this principle can only be prevented by pursuing strictly the mode pointed out by law. This deed wants those legal solemnities which the law requires to make it valid against creditors. The plaintiff is a creditor; the deed is, therefore, not valid against him. The word *creditor*, in the act of assembly, means not only the creditors of the grantor, but the creditors of every person whose debts could have been legally satisfied out of the property, if such deed had not been made. If the word is to have the limited construction contended for on the other side, and the deed be void only as to *her* creditors, and as to subsequent purchasers from *her*, the statute becomes nugatory; because after marriage *she has no creditors*, and *cannot sell and convey*. Her creditors have become his creditors; her debts have become his debts. If the deed be void as to *her* creditors, it must be void as to *his* creditors. If she can neither sell nor have creditors, the act must apply to his creditors, or it will be idle and unavailing.

If the husband had sold these slaves to persons ignorant of the deed, the sale would have been valid.

PIERCE
v.
TURNER.

If he had been trusted upon the faith of this pro-perty, which he had in his possession, and which was supposed to have come by his wife, such creditors, who were ignorant of the deed, would have a right to payment out of this property. If they could not, the possession of the slaves would have been a fraud upon such creditors.

It is true, in the present case, the debt was con-tracted before the marriage, but that cannot alter the principle of law. If the deed be void as to *any* of his creditors, it is void as to *all.*

The term *creditors* is general, and literally comprehends creditors of the husband, as well as creditors of the wife. Where the words of a sta-tute are plain, the court cannot indulge any latitude of construction, but must pursue the words. 3 *Call*, 106. 2 *Call*, 183. *Eppes* v. *Randolph.*

If the property was liable for the husband's debts, it was assets, and her appropriating it to her own use, makes her an executrix in her own wrong; (*Toller*, 17.) although she did it claiming them as her own, and under a void deed; 2 *Vin. Abr.* 211. 2 *Term Rep.* 588. *Edwards* v. *Mercer. Cro. Jac.* 270. *Hawes* v. *Loring.* 2 *Bac. Abr.* 338. 5 *Co.* 34. a., even if there be a rightful administrator. But the possession taken by the sheriff of Northumberland county was not an administration. 2 *Term Rep.* 97.

If this deed be valid against creditors, no mar-riage settlement need be recorded. It renders un-necessary all the precaution which the legislature so anxiously took to prevent this kind of fraud and imposition.

*C. Simms, P. B. Key* and *Jones,* contra.

The act for regulating conveyances, as it relates to creditors and their debtors, was intended to pro-tect the former against secret deeds and convey-ances made by the latter; it never was intended to

injure the rights of third persons, *who do not claim under the debtor.*

Lord Mansfield, in the case of *Cadogan* v. *Kennett, Cowp.* 434. speaking of the statute of 13 *Eliz. c.* 5. which relates to frauds against creditors, says, that " such a construction is not to be given in support of creditors as will make third persons sufferers."

If there is any difficulty in the construction of this act it arises from the generality of the expression " *creditors and subsequent purchasers.*"

The first section of the act declares, that no conveyance shall be good against any creditor or purchaser, for valuable consideration, not having notice thereof, unless it be acknowledged or proved by three witnesses, &c.

What purchaser is intended by this act? Unquestionably a purchaser from the person who made the first deed. The effect or operation of the act, is to give validity to the second deed duly proved and recorded in preference to a prior deed, not duly proved and recorded; and not to invalidate the first deed, in favour of a purchaser for a valuable consideration from a person other than the maker of the first deed.

To illustrate the subject; suppose A. the rightful owner of property makes a conveyance of it to B. which is not recorded. C. who sets up a claim to the property, sells and conveys it to D. for a valuable consideration, and the deed is duly recorded; would the deed from A. to B. be considered as void against D. who does not claim under A.? certainly not. Then the subsequent purchaser must claim under the person who made the first deed, or the first deed cannot be considered void as to him. So the general term " *creditors*," used in the act must, for the like reasons, be understood to mean the creditors of the grantor or bar-

gainor in the first deed, and none but *such* creditors, can set aside the deed.

If A. by deed conveys property to B. and the deed is not recorded according to the act. C. the heir of A. contracts debts. The creditors of C. would have no lien or claim on the property conveyed by A. to B., nor would it be liable in any manner to C.'s debts; yet, but for the deed, the land would have descended to C. The right which creditors have to the property of their debtor is *derivative.* If *he* never had a right to the property, *they* can have none. Charles Turner never had any right to this property, unless under the deed.

Rebecca Kenner, before the marriage, was the sole and absolute owner of it, and was fully competent to dispose of it as she thought proper.

She did dispose of it by a deed to trustees, which she was competent to make, which was completely binding upon her, and which devested from her all legal title and claim to the property. At the time of the marriage she had no legal estate in her which could, by operation of law, be transferred to her husband by the marriage. As he was a party to the deed, and thereby assented to it, he was bound by it, and could never set it aside. Between all the parties to the deed it was as valid and binding as if it had been duly acknowledged and recorded. The creditors of Charles Turner can claim nothing which he could not claim. If the marriage did not transfer the property to *him*, *they* cannot claim it at law. What never was *his* cannot be *theirs*.

If the property never was his, so as to be assets, the defendant can never be charged as executrix in her own wrong for taking possession of it.

But even if this property should finally be adjudged to be assets, yet we contend she is not liable as *executrix de son tort.* If she took possession of the slaves on a fair claim of property, believing her-

self lawfully entitled to them, it cannot amount to such a tortious act as will charge her as *executrix de son tort*. *Bro. Abr. Administrator, pl. 36. Executor, pl. 162. Fitz. Abr. Executor, pl. 65. Roll. Abr. Executor, pl. 417. 11 Vin. Abr. Executor, C. a. and B. a. pl. 5. 2 Leon, 226. Com. Dig. Administrator, C. 2. Freem. 13. pl. 12. Dyer, 166. Stokes v. Porter.*

The deed was good at law between the parties, and by the assent of her trustees she had a legal right to the possession; and wherever a person comes lawfully into the possession of the goods he can never be charged *as executor de son tort*. The rightful executor could never claim these slaves as assets, because the deed was good between the parties, and he would be estopped by the sealing and delivery of the deed by Charles Turner, his testator.

If the creditors of the husband have any remedy, it must be in equity; where it is a well settled principle that if the representatives of the husband are obliged to resort to equity to get possession of the wife's estate, they shall first make her an adequate settlement. She is considered as a fair creditor to that extent. 1 *Fonbl. e. 2. § 6. p. 87: note k.* 10 *Ves. jun. 360. Rider v. Kidder.* 1 *P. Wms.* 382. *Jacobson v. Williams.* And so far from setting aside such a deed as this, a court of equity will enforce a mere agreement for a settlement even in opposition to creditors.

If this were a contest between the creditors of the wife, and the creditors of the husband, the contest must be decided in favour of the former. "Though the husband by the marriage adopts the wife and her circumstances together, and is liable to her then debts, *yet he is liable to them only during the coverture, unless the creditor recover judgment against him in the life-time of the wife;* nor can a court of equity make him liable in respect of the fortune which he may have had with her." 1 *Fonb.* 91. *c. 2. § 6.* 1 *P. Wms.* 461. *Earl of Thomond v.*

*Earl of Suffolk.* 3 *P. Wms.* 410. *Heard* v. *Stamford. Forrester,* 173. Her debts do not by the marriage become absolutely *his* debts. Her creditors do not lose their right of action against her; but after his death may pursue their remedy against her and her separate estate.

The terms debtor and creditor are correlative. The creditor meant by the statute must mean the creditor of that debtor whose deed is to be set aside.

This deed was not void *ab initio* as to any creditor of either of the parties. For eight months it was valid as to all creditors; and is still valid as to all the parties.

Here is no fraud, either legal or moral, as to the creditors of the husband. The consideration of marriage is a fair, a valuable, and a highly favoured consideration, and has always prevailed, both at law and in equity, even against creditors.

The plaintiff's counsel, however, set up the marriage itself to defeat the deed made in consideration of that marriage.

The case of *Edwards* v. *Mercer,* 2 *Term Rep.* 588. was a case of fraud. It was void *ab initio;* not by reason of the omission to record it

MARSHALL, Ch. J. mentioned the case of *Anderson* v. *Anderson,* 2 *Call,* 204. where it seems to have been decided that the word *creditor,* in the act, included creditors of the husband as well as creditors of the wife.

*Jones.* That was not the case of a conveyance, but of a contract before marriage without the intervention of a trustee. This contract did not, and could not, prevent the legal operation of the marriage which transferred every thing to the husband. The wife was possessed of the legal estate at the time of the marriage. But in the present case the

deed was good, and no legal estate remained in Rebecca Kenner, at the time of her marriage.

*Swann*, in reply.

The words of the act are, that the deed shall be void as to " *all creditors and subsequent purchasers*" unless, &c. The plaintiff being a creditor, it is void as to him. By the marriage the property, as to the plaintiff's claim, vested in Charles Turner, in the same manner as if Rebecca Kenner had transferred it to him by deed duly acknowledged and recorded. He received possession of them, and from that possession acquired credit with the plaintiff and others. If this property should not be rendered liable to his debts, the object of the law will be frustrated.

To restrict the term *creditors* to the creditors of the *grantor* is neither consistent with the letter nor the spirit of the law.

If this construction be correct, the creditors of a subsequent purchaser are not entitled to the benefit of this act. If the property should pass through the hands of six purchasers, would not the creditors of the last purchaser be entitled to seize it? And shall the vendor set up a secret deed, and claim it, because the creditor is not his creditor? How would this differ from the case of a creditor of the first purchaser? The claim of such a creditor would be good against the secret deed of the vendor.

The marriage being a purchase; the creditor stands upon the same ground.

The creditors of the vendor and purchaser have a right to consider the deed as null.

If the vendor retains possession of the property, and appears to be the owner, the creditor may seize it notwithstanding a secret unrecorded deed.

So if a purchaser has obtained a deed for it, and

is the apparent owner of it, the creditor of the purchaser may seize it notwithstanding a secret unrecorded deed.

Unless the act of·assembly has this operation, it has none, and no marriage settlement will be recorded in future.

The derivative title may be better, than the original; as in the case of a purchaser without notice from a purchaser with notice.

Charles Turner had notice, but if he had sold to a purchaser who had not notice, this purchaser must have held the property against this unrecorded deed. *Sugden's Law of Vendors*, 448. *2 Vern.* 384. *Amb.* 313. *2 Atk.* 242.

The deed was void *ab initio* as to creditors, as soon as the time for recording had elapsed.

*March* 13.

WASHINGTON, J. delivered the opinion of the court as follows, viz.

This is an action brought by a creditor of Charles Turner, against Rebecca Turner, who is charged as his executrix; and the questions submitted to the consideration of the court are, 1st. Whether the slaves, mentioned in the deed of the 14th of February, 1798, are to be taken as assets belonging to the estate of Charles Turner; and if so, then, 2d. Whether Mrs. Turner can, under the circumstances of this case, be properly charged as an executrix of her own wrong? If the first question be determined in favour of the defendant in error, it will become unnecessary to consider the second; as it does not appear that Mrs. Turner intermeddled in any manner with the estate of her deceased husband, unless these slaves did, in point of law, constitute a part of that estate.

The first question depends upon the construction which the court may give to the 4th section of the statute of Virginia, passed on the 13th of December, 1792, entitled " An act for regulating conveyances," which declares that all conveyances of land, marriage settlements of lands, slaves, or other personal property, deeds of trust and mortgages thereafter made should be void as to *all creditors and subsequent purchasers*, unless the same were acknowledged or proved, and recorded within the time prescribed by the statute ; but that the same as between the parties and their heirs should nevertheless be valid and binding.

The deed from Rebecca Kenner, the defendant in error, previous to her intermarriage with Charles Turner, by which the slaves in question were settled on the said Charles Turner and herself, during their lives, and the life of the longest liver of them, with remainder to the heirs of the said Rebecca, not having been proved and recorded within the time prescribed by law, it is contended by the plaintiff in error that the same became void as to the creditors of Charles Turner, whose rights remained unimpaired by that deed, in the same manner as if it had never been made; in which case, it is not denied that an absolute estate would have vested in the husband, on his marriage.

This argument proceeds upon the ground, that by the words " all creditors and subsequent purchasers," is meant as well the creditors of the grantee and subsequent purchasers from him, as those who might derive title under the grantor. Although the words are certainly broad enough to comprehend the whole, it is believed by a majority of the court that the construction should be such as to limit the application of them to the creditors of, and subsequent purchasers from, the grantor. In no case but one, where a title can be set up for the grantee paramount the deed, can it ever be the interest of a creditor of the grantee to insist upon such a construction as is contended for in this; for as he must derive his title

under the deed, if it be void as to him, it is impossible for him to found a claim upon it in right of the grantee, whose only title is under the deed. It would be strange that a deed should be binding upon the grantee and his heirs. and yet void as to persons claiming under him, for a valuable consideration; and yet such would be the consequence, if the words " all creditors and subsequent purchasers" should be understood to apply to persons claiming under the grantee as well as those claiming under the grantor. Indeed it would seem repugnant and absurd to apply the same expressions to persons, who, if they claim at all, must claim under the deed, and also to those who claim against the deed; in the latter case, the invalidity of the deed is consistent with the claim, in the former it is destructive of it.

It may be said, however, that these observations are inapplicable to this particular case, because the creditors of the husband do not claim under but against the deed; and, in this respect, stand upon the same ground as the creditors of the grantor. But if in every other case which can be stated, the invalidity of the deed is applicable to the creditors of the grantor, or those claiming under him, and to none other, by what rule of construction can the same words have a more extended meaning, so as to be applied to persons who claim in right of a party to the same deed other than the grantor. If the deed in question had granted to Charles Turner an estate in fee as to the land, and for life in respect to the slaves, would it have been void as to simple contract creditors, who could go only against the personal estate, and good as to specialty creditors, who might subject the real assets? and yet, if the deed be void at all, as to the *creditors of the husband*, it must be so throughout; in which case it might well be doubted whether the land could be made liable to the payment of the husband's debts; or, to present the question in a less doubtful shape, would the deed be considered void as to a purchaser, from the husband, of the slaves, and good as to a purchaser of the land? Let the true interpretation of the words " all

creditors and subsequent purchasers" be once ascertained, and every difficulty in the case is at an end. If they are construed to mean the creditors of the grantor, or subsequent purchasers from him, then, the deed being good between all the parties to it, no estate vested in Charles Turner, but such as the deed itself passed to him. The title of his creditors being clearly derivative, if he had no title under the deed, (and being himself bound by it, he could have none which was inconsistent with it,) then his creditors could have none. But if he had a title incompatible with that granted by the deed, then he was not bound by the deed; contrary to the statute which declares that he was bound. If his creditors have any such title, it cannot be derived from him, when, in point of law, he had none in himself; and, independent of his title, it is impossible to show any in them. If a subsequent purchaser, with notice of a prior unrecorded deed, could not prevail against the title of the first purchaser, and most unquestionably he could not, how much stronger is the case when such subsequent purchaser is even a party to the first deed, and claims an interest under it? To say in this case, that, upon the marriage of Charles Turner, or at any time afterwards, the law cast upon him an estate in the property conveyed by this deed, of which he had notice, and to which he was a party, inconsistent with the estate conveyed to him by that deed, (and this must be said, if his creditors can claim such estate in his right,) is, in the opinion of a majority of the court, repugnant to the plain meaning and spirit of the law under consideration.

That creditors of the husband, or purchasers from him, may be injured by the construction which this court feels itself compelled to give to this law, need not be denied; but it is not for this tribunal to afford them relief. It might, perhaps, be well if the law were so amended as to render deeds made in contemplation of marriage void in express terms, as *to the creditors of the husband, or purchasers from him,* in case the same should not be recorded within the time prescribed by law.

PIERCE
v.
TURNER.

The court has felt some difficulty in consequence of a decision of the court of appeals in the case of *Anderson* v. *Anderson;* but it is believed that the judgment in that case was perfectly correct, let the particular point which occurs in this cause be settled one way or the other. In that case, the contract was not only executory and rendered void, at law, by the subsequent intermarriage of the parties to the contract, but it was, at the time when the slaves were taken in execution, perfectly contingent whether the wife could ever claim any interest in them, in opposition to persons deriving title under the husband. For if the husband should have survived the wife, or if they should have had issue, the absolute legal estate of the husband, gained by the intermarriage, would have remained unaffected by the deed. There was, therefore, no reason why the creditors of the husband should be prevented from receiving satisfaction of their debts out of his legal estate in the slaves, because it was subject to an equitable contingent interest in the wife, which might never become effectual. A court of equity might well say to her, as you have no remedy, at law, for a breach of the contract by the husband, in consequence of not having interposed trustees to protect your rights, and have omitted to record the deed by which creditors and subsequent purchasers might be defrauded, we will not now decree you a specific performance against creditors who have law and equity on their side.

Decree affirmed.

JOHNSON, J. I am unfortunate enough to dissent from my brethren in this case. I think the creditors of Turner entitled to recover, and entitled to recover in *this form of action.*

I will not contest the general principle, that the creditors, to whose benefit this act must be understood to operate, are the creditors of that party only from whom the estate moves. But this case presents an exception to the general rule; and the rea-

soning, from which the general conclusion results, will be found inapplicable to the case of husband and wife, with regard to the personal estate of the latter.

The words of the act are admitted to be sufficiently comprehensive to include the creditors of both: the general rule is, that the letter must prevail; and it is only when an adherence to the letter will involve a court in absurdity, or inextricable difficulty, that the spirit is resorted to as a restriction upon the literal meaning. But the construction which I give to this act removes repugnance and absurdity, and produces a concordance between the letter and the spirit, which appears to my mind conclusive upon its correctness.

What was the object of the legislature? It was to protect the community from that false credit which men acquire in society, from the possession of or supposed interest in property; to place within their reach the means of avoiding those frauds which may be practised upon them, by the possessor of property, when an estate or interest in it exists, in fact, in some other person.

The argument in favour of the defendant is, that the creditors of the grantee can derive no benefit from a deed which the act declares void, and which, consequently, could vest no interest in their debtor. Through him they must claim, and no other estate but that which existed in him, ought to be subjected to their debts.

I will not pass an opinion upon the correctness of an argument which, in the case where possession follows the alienation, may make the act productive of the very fraud which it was intended to obviate. My opinion is founded upon a ground which is unaffected by the conclusion upon this point, or rather in perfect coincidence with that conclusion. I deduce my conclusion from the consideration that the claim of Turner's creditors is not derived through

the deed, but is, in fact, in direct hostility with its operation. The effect of the marriage, in transferring the property to the husband, is the foundation of their claim; and the deed executed on the intermarriage of the defendant with Charles Turner, constitutes the subject of the defence against their claim. The creditors, in order to maintain their action, prove, first, the property in the wife before marriage, then her intermarriage with their debtor. These facts, in operation of law, upon her personal property, sustain their right of recovery. But, in opposition to their claim, the wife endeavours to avail herself of this deed; and this question is brought up on an exception taken by the creditors to its legal validity. The ground of their objection is, that it wants that evidence of authenticity, which the law requires, to make it, as to them, a valid instrument. No doubt is entertained with regard to the invalidity of this instrument, as to the description of creditors; but it is contended, on behalf of the defendant, that no other creditors can avail themselves of that objection, except the creditors of the wife before marriage. There appears to me to be no reason for the distinction in the case of husband and wife. Her creditors before marriage become his during coverture; she can contract no debts to which she can be made personally liable; her personal property becomes his by the act of intermarriage, and he acquires all the credit, in society, resulting from the acquisition and possession of that property. It is not upon a deed, which this act declares void, that the creditors found their claim, but upon an act in *pais*, the operation of which is an immediate transfer of property, unless that effect be prevented by the legal execution of some instrument of writing. If such an instrument, executed before marriage, be not recorded within eight months, it loses all legal validity as to creditors, and it is the same as if no such instrument had ever been executed. The recording, as to them, is as necessary as the sealing and delivery is between the parties.

The consistency of this opinion with the argument that the creditors of the grantee can derive no interest under a deed which, as to them, is declared void, will appear from distinctly reflecting on the necessary consequence of such an admission in this case. Declare the deed void, and what is the consequence? It no longer affects the property of the wife, so as to produce a state of things different from that which would exist if it had never been created; and the operation of the deed was not to vest an interest or estate in Charles Turner, but to prevent any estate from vesting in him by the ordinary effect of marriage. Remove the preventing cause, and the property becomes, unquestionably, subject to the husband's debts.

Two objections to this opinion have been urged, on which it may be proper to make some remarks. The first that I shall notice is, how the same deed can be valid as between the parties, so as really to prevent any transfer of property to the husband, and yet, through him, creditors may derive such an interest as to subject it to the payment of his debts. If this argument proves any thing, it proves too much. A moment's reflection will show, that it is as applicable to the case of the grantor as of the grantee; for, after the execution of the deed, the grantor has, in fact, and in the acknowledgment of the act, no more interest in the property than the grantee had before its execution, or upon its becoming void for want of recording. But every apparent absurdity may be reconciled thus. Legal claims must be supported by legal proof. The abstract rights of parties become immaterial, if not susceptible of substantiation by evidence. In a question, then, between the direct representatives of the husband and wife, the deed is a valid instrument, and may be received as duly authenticated written evidence, to support a right derived under it. But, between the one party and the creditor of the other, the law declares it wholly inefficacious, for want of a ceremony which is made essential to its authenticity. The most ordinary deed cannot be

received in evidence until proved according to the rules of evidence; and the operation of individual acts, in producing transfers of property, must ever be subject to such modifications as may be made by positive law.

The other difficulty arises from the consideration how this deed can be valid against all persons (which it confessedly is) during eight months, and then cease to operate as to creditors. To this it may be answered, that this objection, as well as the preceding, is equally applicable to the case of the creditor both of alienor and alienee; and, if valid at all, might defeat the operation of this act altogether. But, as a provision of positive law, such considerations are not to defeat it. Possibly some inconvenience may result from holding property in this suspended situation; but the duration of the inconvenience is not long, nor the contingency far remote. Nor is an analogous state of things unknown to the common or civil lawyer; executory devises, contingent remainders, and shifting uses, produce a similar uncertainty and suspension of right. During the eight months which are given for recording a deed, the interests of parties must have vested only *sub modo*, or subject to the contingency of recording it within the legal time: and no doubt a court of equity would interpose its authority, during that period, to adjust the rights of parties. Nor will this objection at all affect the opinion which I entertain respecting the rights of the plaintiff; for, although the deed certainly did hold the personal property of the wife in a suspended state, during the eight months, so that the creditors could not, in that time, have taken it under execution, yet, after the expiration of that period, the deed lost its protecting effect, and that property then became subject to their debts.

These views of the subject appeared to me to solve every difficulty, and lead to a conclusion upon the second point made in the argument; viz. whether the defendant may be charged as executrix *de son tort*. The case of *Harding & Mercer* comes

fully up to the present, and it will be found of necessity, in order to give effect to this act, that this remedy should be countenanced. The hardships of it would, no doubt, be remedied by a court of equity, in cases free from collusion or moral fraud, so as to prevent the defendant from being charged to an amount greater than the value of the goods which actually came to her hands. But the necessity of sanctioning this mode of pursuing property, circumstanced as in this case, will appear from the impossibility of a creditor's getting at it in any other manner, at law. Should the creditor himself administer, he can never recover it, because, as the legal representative of the husband, the deed would be valid against him without being recorded. Should any other person administer, he could never be charged with the value of assets, which for the same reason, could never come to his hands. So that both precedent and principle concur in supporting the correctness of permitting him to resort to the present remedy.