Ckabb, J.
The plaintiff brought this action of detinue against the defendant, in the Circuit Court of Williamson County, for a slave. The defendant pleaded the general issue, and two special pleas, which last two it is unnecessary to notice.
From the bill of exceptions, it appears that Daniel Crenshaw, the father of Cornelius, the plaintiff, formerly owned the slave in dispute in the State of Virginia. On the 30th March, 1812, he, by bill of sale, bargained and sold her with others, to one Richard Herring. By a deed made under the hands and seals of Herring and the plaintiff, dated 16th July, 1813, the former, in consideration of one dollar to him paid by the latter, and for the further consideration, that [106] Nancy Crenshaw, the wife of Daniel, *465 and mother of Cornelius, had relinquished to Herring her right of dower to a certain tract of land before that time sold to Herring by her husband Daniel; bargained and sold the slave in dispute and her daughter Sally to Cornelius Crenshaw, for the only and exclusive use and benefit of his mother Haney, free from all claims, rights, and demands of her husband, Daniel Crenshaw, and said Cornelius was to hold, convey, or dispose of said slaves, to such use as his mother by deed or last will and testament, signed and sealed by her, and attested by one credible witness, should direct or prescribe. Much proof was submitted to the jury, to show that the sale to Herring and that to the plaintiff were fraudulent and void, as to the creditors of Daniel Crenshaw; and on the other side to prove that they were bona fide transactions.
Several questions have been argued at the bar. But it is not necessary to give an opinion upon any, except as to the correctness of that part of the charge, which relates to the registration in this State of the deed of trust to the plaintiff.
The Act of 1801, ch. 25, latter part of § 2, provides that where any loan of goods and chattels, shall be pretended to have been made to any person with whom, or those claiming under him, possession shall have remained by the space of five years, without demand made and pursued by due process of law, on the part of the pretended lender; or where any reservation, or limitation, shall be pretended to have been made of a use of property by way of condition, reversion, remainder, or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken, as to the creditor and purchasers, of the person aforesaid, &e. remaining in possession to be fraudulent within this Act, and that the absolute property is with the possession, unless such loan, reservation, or limitation of use or property were declared by will or by deed, in writing, proved and recorded as aforesaid.
This act of Assembly was doubtless copied from the Virginia Act of 1785. The clause above recited is not found in the British statute of Fraud and Perjuries, and against fraudulent [107] conveyances. It is believed to have been introduced into the Virginia code by the distinguished and learned gentlemen who composed the revisors of her laws. The same provision is found in the statute-book of Kentucky.
In the reports of decisions made by the courts of appeals in those two States are many adjudications upon the clause of the Act in question, most of which have been examined by this Court.
Upon clear and long-settled principles a liberal construction ought to be given to the clause in question, for the suppression of the fraud and mischief it was intended to remedy. Heydon’s Case, 3 Rep. 7; 1 Blac. Com. 88. It is argued jjy the counsel for the defendant in error, that a registration in this State of the deed or will, declaring a loan, reservation, or lim *466 itation of a use of property, is as much requisite, where the loan, reservation, or limitation took place in another independent government, and where a registration has been made there, as if the transaction had originated in this State. That the object of the Act was to apprise the community here of the otherwise secret fact that he who has the possession is not the real or entire owner ; that it is the continued possession for five years, in this State, upon which the provision acts, and which it pronounces to he evidence of ownership, as against creditors of, and purchasers from the possessor. The arguments merit, and would receive much attention and consideration, in a case where it should be necessary to decide the point to which they apply.
Being satisfied that the case before the Court is one to which this clause of the Act of 1801 has no application, we need not, and do not intend to express any opinion upon the point before alluded to. The clause in question was framed by master workmen in their profession, and under circumstances the most favorable; not in the hurry and excitement of a legislative session, but, as all laws of general import and consequence ought to be, in contemplative retirement. The words used in the Act are of well-known technical signification, familiar to those who are versed in the common law. The cases embraced in the clause are [108] cases of loans and cases of reservation, or limitation of a use of property, by way of condition, reversion, remainder, or otherwise. In all such cases the person to whom the property is lent, or who has a particular estate of any kind (after the determination of which), a use of property reserved or limited to another, by way of condition, reversion, or remainder, &c. is absolute owner, &c. unless the loan, &c. were written and recorded.
Now, what is the case before the Court ? Was it a loan? or was there a reservation or limitation of a use of property by way of condition, reversion, remainder, or otherwise ?
There was no loan, Herring having conveyed the slaves to Cornelius Crenshaw for the only use of his mother, &c. forever, she could only have the use by having the possession ; she was entitled to it. There was no reservation of a use or property to the seller of the property, on condition, or as a reversion. The whole property was divested out of .him, by the plain words and meaning of the deed ; nor was any remainder limited to any other person. The whole equitable interest was vested in the mother. True, as a matter of form, the legal estate was vested in Cornelius, because none such could vest in his mother, she being a married woman.
But it is apprehended that this is not a limitation of a use or property in the son, within the meaning of the Act. Had there been a particular estate vested in the mother, as an estate for years, or for life, remainder to the son; or a condition inserted, that on the happening of a certain event, or the doing or not doing of some specified act, the right should be vested in the son, then the son, would have had an interest at war with *467 th¿ unexplained possession of the mother, and calculated to mislead creditors and purchasers. But there is no interest limited to the son, the interest is all in the mother. He is a mere trustee, and sue when he may, he can only do so for the benefit of his mother.
Leave the relation of man and wife, between Daniel and Nancy Cren-shaw, out of view, and it would be impossible that any one could be misled by Nancy Crenshaw’s having [109] the possession, for Nancy Crenshaw had the sole and exclusive interest.
The question whether such a deed of trust ought not to be registered, in order to its validity, as against creditors and purchasers from the bargainor, is one of an entirely different character, not in the least depending upon the clause we are considering, and certainly has no relation to this case, as the attempt here is not to subject the slave to Herring’s but to Daniel Crenshaw’s debts. The truth is, the difficulty principally arises from the circumstance of Daniel and Nancy Crenshaw being husband and wife, and property which is in her possession must, therefore, almost necessarily be somewhat in the possession of her husband. That the slave might be legally sold for the exclusive use and benefit of the married woman, by the intervention of a trustee, cannot be doubted. Bacon’s Abr. Baron and Femes, D, and the authorities there referred to; Rich v. Cockrell, 9 Vesey, jun. 369. And we have no law which will make an unregistered deed for such a purpose necessarily fraudulent or void, as against the creditors of the husband, however .it might be as against the creditors or purchasers from the bargainor for a sufficient consideration. When a deed has been bona fide made, conveying property for the separate'use of a married woman, we-apprehend that the law looks upon it with as much complacency, and feel's-as much solicitude to render it effectual, as it does to support and protect-the rights of creditors. If it was not bottomed upon such consideration, or-.was not bona fide, then it is certainly void; and that is a matter of fact for the jury to determine from a view of the circumstances of the case.
The Court below erred in charging the jury that if the transaction were bona fide, yet upon the removal of Daniel Crenshaw and his wife to this State bringing with them the trust property, if the deed of trust or some writing evidencing the loan from Cornelius the plaintiff was not registered here, a possession of five years here, without claim made and prosecuted, would defeat the right of the plaintiff. For this cause the judgment must be reversed and a new trial had.
[110]
Catron,.J.
Richard Herring conveyed to Cornelius Crenshaw, for a full and-valuable consideration, paid to the grantor by Nancy Cren-shaw, the mother of Cornelius, and for her sole and separate use, two-slaves, Juno and her daughter Sally, in the following words : —
[Here the deed is set out in Judge Catron’s opinion, which is omitted by the Reporters.]
*468 This deed of trust'was executed in the county of .Lunenburg, in the State of Virginia, where the parties thereto resided, and the property was at the time of its execution, and where Richard Herring and Cornelius Crenshaw yet reside.
On the 12th day of August, 1813, the deed was acknowledged by Herring and Cornelius Crenshaw,' in the Lunenburg County Court, and recorded.
In 1814 Daniel Crenshaw, the husband of Nancy and father of Cornelius, removed to the State of Tennessee, together with his wife and the slaves ; has resided in Williamson County more than five years, without the deed having been registered in this State; contracted debts, judgments were recovered against him, the slaves were seized upon and sold as his property; upon which Cornelius Crenshaw sued the sheriff, who pleaded the Statute of Frauds of 1801, ch. 25, in bar, and also non delinet.
The Court charged the jury substantially that, unless the deed or writing evidencing the loan from Cornelius Crenshaw to his mother was registered here according to the laws of this State, a possession for five years in this State would divest the title of' Cornelius to the slaves, and authorize the creditors of Daniel Crenshaw to seize upon and sell them for his debts. The jury found .for the defendant.
The first question to be examined is, whether this is a conveyance upon which the Act of 1801, ch. 25, § 2, operates ?
The Act provides that, where any reservation or limitation shall be made of a use or property by way of condition, reversion, remainder, or otherwise, in goods, the possession whereof shall have remained in the cestui que trust, or those [111] claiming under him, for the space of five years, such reservation, as to creditors and purchasers shall be taken to be fraudulent within the Act, and the absolute property with the possession ; unless such loan, reservation, or limitation of use or property were declared by will, or by deed in writing, proved and registered in the register’s office of the county where • the goods and chattels, or the most valuable part of them, are. It is contended, on the part of the plaintiff in error, that the deed set forth has none of the characteristics of the deeds contemplated by the Act of 1801, and, therefore, had it been executed in this State, no registration thereof would have been necessary to preserve the estate of Cornelius and Nancy Crenshaw from Daniel Crenshaw’s creditors. -
The Act provides that, where any reservation is made of the property by way of reversion, remainder, or otherwise, five years’ possession shall bar so much of the title as is reserved.
Has Cornelius Crenshaw reserved any interest in himself in the two slaves? For where any interest is reserved this statute intended to bar; whether it be that of a naked trust or a beneficial interest, the absolute property shall be taken to be with the possession, and not a mere right *469 to use the property, which interest creditors and purchasers cannot ¿¡each.
In this State slaves are subject to be limited as real estates are, and hence the terms by which real estates are limited are used in our Act of 1801, ch. 25, which is copied from the Act of Virginia of 1785, ch. 10, where the same practice, sanctioned by statute, prevails, and has been very extensively practised. It is said in the statute that all reversions shall be barred. In the present instance, should Nancy Crenshaw fail to dispose of her slaves by deed or will, they will revert to Cornelius or his executors; this reversionary interest the Act also intended to bar in favor of creditors and purchasers of him holding the possession of the slaves.
Had this deed then been executed for the purpose of conveying the title to property in this State at the time of its execution, and not been registered in the county where [112] the property, or the most valuable part thereof, was at the time of its execution, the same would be fraudulent as to creditors and purchasers, and the absolute property taken to be with the possession.
The Acts of 1805, ch. 16, § 2, and 1807, ch. 85, §§ 3, 4, have been referred to as having an influence upon the present question. So it was impressed on my mind during the argument, but upon examination the fact is found to be otherwise. The Acts provide that all deeds, &c. for slaves, shall be acknowledged or proved by two witnesses, and registered within one year after the execution of the deed, and, unless so registered, the deed shall be void as to creditors and purchasers.
, The creditors and purchasers referred to in these Acts are creditors of and purchasers from, the grantor, not the grantee as in this instance Pierce v. Turner, 5 Cranch, 154. Nor is there any statute in this State materially altering the provisions of the Act of 1801 ; and if there is no necessity for the registration of deeds like the present by this Act, there was no registration required by any other to protect the title of Cornelius Crenshaw against the claim of Daniel Crenshaw’s creditors ; nor would any deed or writing for this purpose have been necessary by the laws of Virginia (Randolph v. Randolph and others, 3 Mun. 99), supposing the deed without reservation. Had this deed, however, been made in this State for property here, I feel great confidence in the opinion that it is of a character to be operated upon by the Act of 1801, and would be void as to the creditors of Mrs. Crenshaw, and probably those of her husband.
The policy of the Legislature, it is apprehended, was to cut off, and bar in favor of creditors and purchasers, all outstanding titles to personal property which were not vested in the possessor, unless such titles were made public by being put on record. Hence the second and main question in this case, and which is deemed of great importance, necessarily arises: The circuit judge charged the jury that, notwithstanding the recording of *470 the deed in the State of Virginia, or the removal of the slaves to this State by Daniel Crenshaw, and a continuance of possession here for five [118] years, without the deed, or some paper evidencing the title of Cornelius Crenshaw being registered, his title would be divested as to creditors of, and purchasers from, Daniel Crenshaw.
Much slave property is limited, and the title held in trust, and distinct from the possession, in the State of Virginia. The cases of most common occurrence there are limitations and trust interests declared by last wills and testaments. The statutes of this and that State declare that the reservation of title, which is distinct from the possession, shall be declared by deed or will proved and recorded, otherwise the absolute property shall be taken to be with the possession, where it has continued for five years, during all of which time the Courts of Virginia and Kentucky have decided the parties to the deed are entitled to have the same proved and recorded. Beasley v. Owens, 3 Hen. and Man. 449; Farquarson v. White, 3 Marshall, 6.
Did the Legislature of Tennessee in 1801 intend to regulate any contracts, other than such as were made for the transfer of property in our own State? Or was it intended by the statute to divest honestly acquired titles, pursuant tp the laws of sister States, by a possession of five years, in the cestui que trust in this State ? The statute says the reservation shall be declared by will duly proved and recorded, or by deed in writing, acknowledged or proved by one witness at least, in a court of record, and registered in the register’s office of the county, where the goods and chattels, or the most valuable part of them, are, within eight months after the execution thereof.
That the deed is to be registered in the county where the goods were at the time of the execution of the deed is too plain to admit of argument or illustration. This is the notice to creditors and purchasers required by the statute. Suppose it registered in an improper county would such registration be any notice ? It surely would not. In what county then ought Cornelius Crenshaw to have registered his deed ? In the first county in Tennessee to which Daniel Crenshaw brought the slaves. For, according to the doctrine contended for on the part of the defendant in error, [114] the moment the property was brought to this State, the running of the statute, to the destruction of the trustee’s right, commenced its operation : or should it have been registered in the county of Williamson, where Daniel Crenshaw resided for some years, and became indebted? This cannot be, for it is clear that the deed must be registered in the county where the property was, at the time the contract was made separating the title from the possession. This was impossible in the present instance. Hence it follows, that the deed could not be lawfully registered in this .State, in any county, unless the Court were, by construction, to say it was *471 reasonable that it should have been registered in Williamson County. This would be making the law, not expounding it.
Our statute declares that trusts and reservations of title shall be declared by will duly proved and recorded; that is, proved in manner to pass goods, and recorded in the county where the testator resided at the time of his death. That this provision relates to wills executed by citizens of Tennessee, need only be stated to gain admission, because there was no law authorizing foreign wills to be proved and recorded in this State.
Did the Legislature intend to bar and destroy the vested rights of citizen of other States fairly acquired, according to the lex loci contractus of the State where the contract was made ? That a compliance with our statute on the part of the trustee is impossible, whether the limitation, trust, or reservation of title was declared by deed in writing, or by will, has been shown.
To illustrate this, let us suppose a common case, of a father in Virginia making a deed, or will, vesting the legal title to slaves in a trustee, for the use of a married daughter for life, with a remainder over to her children ; the husband, during the life of the wife, removes to this State, resides here five years, and then sells his slaves; would the purchaser take a good title ? It is impossible to prevent the bar, by those in remainder, or the trustee, if the statute applies to such a case, should the husband choose to remove the slaves to this State. The point arose, and was earnestly [115] urged in the cause of Coalson v. Blanton, reported in 3d Haywood ; but the Court took no notice of the argument.
The case supposed is one clearly not within the words of the Statute of 1801; but it is said it is within its spirit. It is very improbable that the framers intended to restrain citizens of other States from emigrating to the country at a time when we needed additions to our population; which must have been the consequence, was it intended to declare titles to slaves held by a settlement to trustees void, after a possession of five years in this State.
It is urged, that we should apply the law by construction, in suppression of fraud, and in favor of creditors, to divest Mrs. Crenshaw and her trustee of the title of these slaves. To which it may be answered, that no reason can be seen why the wife in this instance should not be as much favored as the creditor. It would be a harsh construction to deprive her of property which she had no means of preserving, other than those she employed, by giving the creditors of her husband notice of her right to the slaves; which was an act of good faith, yet not required by any known law: that notice, or the want of it, could make the title to Cornelius Cren-shaw either valid or void, if Iona fide in its inception, and lawfully vested, cannot be maintained, we apprehend, as a legal position.
It is believed the Statute of 1801 will not admit of the construction con *472 tended for; and was the Court to declare the title of the creditors of Daniel Crenshaw superior to that of Mrs. Crenshaw, it would be making a law, not construing one already made, which neither by its terms, nór by any reasonable implication of the words employed, can be extended to the case under consideration, so as to form a bar to the recovery of the plaintiff, — and therefore the judgment ought to be reversed.
Whyte and Peck, JJ. concurred.
Judgment reversed.