GREEN, J.
delivered the opinion of the court.
In the fall of 1830, the complainant, then Mary Florida Dixon,/ a feme sole, and the owner of an estate consisting of fifteen or' twenty thousand dollars in cash, in the hands of her guardian, and thirty or forty negro slaves, contemplating a marriage with the defendant, Henry Baldwin, executed a deed, dated 27th October*,-1830, (in which the said Baldwin also joined,) conveying all her property to James W. Hoggatt,in trust for her separate use and benefit.
By the said deed, the said slaves, &c., were to be held for the sole use and benefit of the said Mary F. until the solemnization of the marriage, and after the marriage she was to have said property, for her separate use, free from the control of her husband, and as a feme sole. She also reserved to herself the power to direct in what manner the slaves should be employed; how the money should be invested; and by her directions in writing, under her hand, in the presence of one or more witnesses, to alienate, sell, dispose of, or invest the said slaves, &c., in any way or manner' she might think proper; also to appoint any other agent or trustee' for the management of said property, and to bequeath or devise the same by her last will and testament.
The marriage was solemnized in November, 1830, and in December thereafter, she made a power of attorney to her husband,-authorising him to take possession of all her property,- to receive' and appropriate the income for their joint use, without being-accountable to her for the same; and if deemed necessary by both, to sell any part of the property, or to invest the principal money in any other real or personal estate, he might thereafter be authorized to do upon the further consent in writing to such sale or investment, signed in the presence of one or more witnesses. By another instrument of the same date, she agreed and directed, that in1 payment of $9,000, due by her guardian, a deed of conveyance should be made to her husband and herself, and their heirs, of a tract of land, in Davidson county, called “Hunter’s Hill,” from Col. *477 Ward, her said guardian. A deed for said land was accordingly executed by Col. Ward to Mr. and Mrs. Baldwin, and their heirs, dated 24th December, 1830. Afterwards the said Hunter’s Hill farm was sold toH. R. W. Hill for $ 10,000, Mr. and Mrs. Bald win joining in the deed to him. This sum of ten thousand dollars was applied in part payment of the Franklin cotton factory, store, &c., which were sold to Baldwin by Parks, Campbell, & Co., for $18,000. -This property was conveyed to Henry Baldwin alone, the 24th October, 1833, about which time he removed to Franklin, where he embarked in the business of cotton spinning and weaving. He became embarrassed in his business, and various judgments were recovered against him, and executions were levied on the above-mentioned property, and on the negroes aforesaid. To prevent the sale of this property, Mrs. Baldwin filed this bill against her husband and his said creditors.
The deed of the 27th of October, 1830, had not been registered until since this bill was filed. And the question is, ■ whether it is void by our statutes, as against the creditors of Henry Báldwin ?
To show that this unregistered deed is not void as to the creditors of the husband, the complainant’s counsel has cited and relied on the cases of Pierce vs. Turner, 5 Cranch, 154: Sand vs. Jeffries, 5 Rand. 211 and 219, and Morgan vs. Elam, 4 Yerg. 375.
The defendants’ counsel attack these cases as having been erroneously decided, and also insist, admitting their authority, they are distinguishable from this case, and, therefore, ought not to govern in its decision; that this case depends upon a proper construction of the act of 1785, ch. 12, sec. 1, and that the supreme court of N. Carolina, in the case of Freeman vs. Hill, 1 Dev. & Bat. Eq. Rep. 389, and the case, Saunders vs. Ferrill, 1 Battle’s Rep. 104, has construed that act correctly.
In the report of the case of Morgan vs. Elam, it is perceived that a majority of the court, dissatisfied with the construction which was given to the Virginia statute in the case of Pierce vs. Turner, continued the cause one term for consideration on advisement. At the next term, the case of Sand vs. Jeffries, decided by the court of appeals of Virginia was produced, and one of the judges yielded to the authority of these two cases, not because he was convinced of their correctness, but because he felt he ought to distrust his own judgment, when opposed to the opinions of the supreme court of the U. States, and of the court of appeals of Virginia.
*478 The case of Morgan vs. Elam was decided in 1833, and was understood to settle the law upon this subject, and it has remained unquestioned ever since, until it was brought under review, in the case now before the court. The conduct of parties has, doubtless, been regulated by that decision, and an omission to register deeds of this description, may have happened, because 'it was believed to be unnecessary to do so; But it is said, that the cases before referred to, are distinguishable from the one now under consideration, in their facts, and in the principles applicable to them. Let us briefly examine and see what discrepancy exists, and whether they are to be regarded as authority in this case.
In the case of Pierce vs. Turner, (5 Cranch, 154,) it was contended by the creditors of Turner, the husband, that the unregistered deed of the wife, by which she had conveyed her own property, to a trustee for her own use, before the marriage, was void by the laws of Virginia, as to all creditors, who, but for the unregistered deed, would have been entitled to have satisfaction of their debts out of the property thereby conveyed. In that case, Rebecca Renner, being a feme sole and seized and possessed in her own right of certain land and slaves, conveyed the same by deed, in consideration of an intended marriage between herself and Charles Turner, to trustees, to be held in trust for the use of herself, until the marriage should be solemnized, and afterwards to the use of herself and Charles Turner, and the longest liver oí them, and after their death to the use of her heirs. Charles Turner was named as the second party to the deed, and joined in the execution thereof. It was dated in February, 1798, and was not recorded until September, 1807.
Turner became indebted and died insolvent, and Rebecca Turner, his widow, still remained in possession of the slaves, and Piercp brought an action of debt against her, in the circuit court of the District of Columbia, sitting at Alexandria, charging her as executrix, in her own wrong, of her late husband, Charles Turner, deceased.
The question was, whether the deed of trust was void, as to the creditors of the husband, so as to charge the widow as executrix in her own wrong. The 4th section of the “act regulating conveyances” in Virginia, provides, “That all conveyances of lands,” and “all deeds of settlement upon marriage, wherein either lands, slaves, money or other personal thing shall be settled,” and *479 «all deeds of trust and mortgages whatever,” shall be void as to all creditors and subsequent purchasers, unless they shall be acknowledged and proved, and recorded according to the directions of this act, but the same, as.between the parties and their heirs, shall nevertheless be valid and binding.
The court decided, that this unregistered deed protected the property of the wife from the creditors of the husband, because the act making unrecorded deeds void as to creditors and subsequent purchasers, meant creditors of, and subsequent purchasers from the grantor. This case in its facts and circumstances, and in all the principles involved in its decision, cannot be distinguished from the one now before the court, unless the provisions of our act of 1785, ch. 12, sec. 1, shall be found to contain provisions, differing so essentially from the Virginia law, as to demand a different decision.
In the case of Sand vs. Jeffries, (5 Rand. 211,) an absolute deed was made by Mrs. Birdsong, (before her marriage, and with his assent,) to her brother J. H. Sand, conveying her slaves and furniture to him. There was no delivery of the property to Sand, and the deed was in fact made for the purpose of securing the property- of Mrs. Birdsong from the claims of the creditors of Jeffries, who was greatly in debt. The marriage took place, and the slaves continued in the possession of Jeffries. The deed was not recorded in the time required by the law of Virginia, and Stewart, a creditor of Jeffries, caused an execution to be levied on some of the slaves. Sand, as the next friend of Mrs. Jeffries, filed a bill against Jeffries and the other creditors, to enjoin the sale. Although the facts in this case, are slightly variant from those in Pierce and Turner, still the question to be decided, was substantially the same, to wit, whether the unrecorded deed of the wife, made before marriage, was void as to those creditors, who but for the deed, would have been entitled to have satisfaction of their debts, out of the property thereby conveyed. In this case, the court of appeals of Virginia, reviewed the decision of the supreme court of the United States, in the case of Pierce vs. Turner, approved its principles, and again declare that the law making unrecorded deeds, void as to creditors, means the creditors of the grantor only; and that this general principle applies equally to the deed of a feme sole, executed before marriage, by which she conveys her property for her separate use, so that the marital right of the husband, does not attach, and his *480 creditors have no right to challenge the deed, because it has not been recorded. In the case of Morgan vs. Elam, (4 Yerg. 375,) decided by this court in 1833, it appeared that Elizabeth Stokes, residing in the State of Virginia, was the owner of a considerable estate, consisting of land, slaves and bank stock; that being about to marry Samuel Elam, she conveyed all her property to W. B. Hamblin, in trust for her separate use during the coverture, and at her death, to whomsoever, she, by will, should appoint to receive the same; Samuel Elam, joined in the deed, and the marriage took place. Elam was greatly involved in debt, and mortgaged the ne-groes to Morgan, one of his creditors, to secure the payment of his debt. The parties with the negroes removed to this State, and Morgan filed a bill to foreclose his mortgage, and subject the ne-groes to the payment of his debt. The deed from Mrs. Elam to Hamblin, had never been recorded in Virginia, or in this State. And the question in this part of that case was, whether this deed was void as to the creditors of the husband, who, but for this unregistered deed, would have been entitled to satisfaction out of the property so conveyed. This court following the cases of Pierce vs. Turner, and Sand vs. Jeffries, decided that the deed - was not void as to the creditors of the husband.
The counsel for Morgan, made a most vigorous attack upon the case of Pierce vs. Turner, and in an able argument, animadverted upon the reasoning of the court in that case. But at the next term, the case of Sand vs. Jeffries was produced, and this court determined, that an anti-nuptial conveyance, made by a wife of her own property for her own separate use, was good as against the creditors of her husband, though not registered. The case now before the court, does not differ from the case of Morgan vs. Elam, in any essential particular. It is true in that case, the creditor was such before the marriage of Elam, and in this case, the creditors became such after the marriage of Baldwin. But we have seen that the principle involved, was the same in all the cases, to wit, whether the unregistered deed is void as to all creditors, who, but for the deed, would be entitled to satisfaction out of the property conveyed? But it is said, admitting the construction of the Virginia act to be correct, still the defendants are entitled to have this deed set aside upon a proper construction of our act of 1785, ch. 12, sec. 1. Let us compare that act with the Virginia law. We have seen that the Virginia law declares, that “all deeds of settle *481 ment upon marriage, wherein either money, slaves, land or other personal thing shall be settled, shall be void as to all creditors and subsequent purchasers, unless they shall be acknowledged, or proved and recorded, according to the directions of this act.” Our act provides, that “all marriage settlements, and other marriage contracts, hereafter to be made, shall be proved within six months after the making thereof, and registered within one month thereafter; and all marriage settlements, and other marriage contracts, not proved and registered, according to the directions of this act, shall be void as to creditors.”
This juxta-position of the two laws, enables us to perceive at once, that ~the Virginia law employs words of more extensive signification and general import, than our own. Itsays, “all deeds of settlements upon marriage, shall be void as to all creditors, unless proved and recorded.” Our act says, “all marriage settlements, and other marriage contracts, not proved and registered, shall be void against creditors.” In the former, the words, “all deeds of settlement upon marriage,” have as extensive signification as in the latter, “all marriage settlements, and other marriage contracts,” can possibly have; therefore, there can be no instrument of writing creating a marriage settlement, embraced in the act of 1785, which is not also embraced in the Virginia law. And when you come to the words of the two acts, by which these instruments are made void if not recorded, the words of the Virginia law are much broader than the language of our act. The Virginia law says, “they shall be void as to all creditors and subsequent purchasers.” Our act only says, “they shall be void against creditors.” The words, “all creditors,” thus used, are very significant, and very unusual in such laws.’ They would seem to indicate, that the legislature of Virginia, intended to include, by the use of the word “all,” other creditors, than those in favor of whom, such law's usually declared deeds void. But our act indicates no such thing; the legislature contenting itself with the use of the simple word, “créditors.” It is difficult to perceive, after this comparison, how it could be thought, that a class of creditors, not embraced in the Virginia law, are provided for in our act of 1785. But it is said, that the preamble of the act of 1785, unlocks the meaning of the legislature, and extends the enacting clause, so as to include the case now under consideration.
The preamble is as follows: “Whereas marriage settlements *482 and other marriage contracts, binding the estates of the husbands, have been frequently made and kept secret, whereby the possessors upon the credit of their apparent property have been enabled to contract great debts, to the manifest deception and injury of their creditors, for remedy whereof,” &c. Here the mischief complained of, is, that “contracts binding the estates of husbands,” had been kept secret, whereby, upon the apparent ownership of the property the possessor had contracted debts. But in what sense can an anti-nuptial deed, executed by the wife to a trustee, by which she conveys her own property for her separate use, be regarded as a contract “binding the estate of the husband?” It is admitted such a deed is valid (if made with the knowledge and consent of the husband) as between the parties.
It prevents the marital right from attaching, and consequently the husband acquires no estate in the wife’s property. The legislature, therefore, in providing against the effect of unregistered marriage settlements, binding the estate of the husband, did not have in view the case of the wife’s anti-nuptial deed of trust of her own property for her separate use. The preamble, so far from indicating such intention, indicates as we have seen a purpose only to provide against such unregistered deeds,.as “bind the estate of the husband,” that is, such marriage settlements made by the husband, by which his property, (that he owned before the marriage, or such property of the wife’s as should vest in him by virtue of the marriage,) should in consideration of marriage, be limited by deed to the wife, and such other persons as the party might choose to select.
In such case, the husband would be the grantor, and the act, in making such deed void as to creditors, for want of registration, only adopts the general principle heretofore referred to. The second section makes this still more plain. It provides that marriage settlements shall not be good against creditors, when a greater value is secured to the intended wife and children of the marriage, than the portion actually received with the wife in marriage, and such estate as the husband may be possessed of at the time of marriage, deducting his debts then due.
This provision manifestly has reference to a conveyance of the husband only. What amount by this act, may be settled upon the wife and children of the marriage? The answer is, the fortune the husband receives with the wife, and so much of his own estate as may be over and above his debts. •
*483 But the preamble, the enacting clause of the first section, and the second section, all speak of the same description of marriage settlements or contracts; therefore, all have reference to deeds executed by the husband only.
But it is said, that this act, has received a different construction by the supreme court of North Carolina, in the case of Saunders vs. Ferrell, (1 Battle’s Rep. 104.) In that case the construction of the act of 1785, was not involved so as to require the judgment of the court. Hector C. Homer and Eliza Savills, before their intermarriage entered into written articles, by which it was agreed that all her estate should be settled for her sole and separate use during her life, with remainder to her intended husband.
After the parties were married, they united in a deed of settlement by which all the property of Mrs. Homer was conveyed to E. Saunders in trust for the sole and separate use of the said Eliza, and at her sole disposal. The husband contracted debts, and executions were delivered to Ferrill, sheriff of Camden county, who seized some of the negroes. Saunders, the trustee, brought an action of detinue for the slaves.
It was contended for the defendant, that the deed of settlement was void as to creditors, because by it the whole property is secured to the wife to be at her disposal, and by the articles executed before the marriage, she was only to have a life estate and the remainder to her husband. The court decided that on account of the excess of interest in the property settled on Mrs. Homer, over and above the stipulations of the anti-nuptial contract, the deed was void as to the whole. This v?as clearly correct, and decisive of the case, but the court go on to remark upon the act of 1785, in reference to the articles which had not been registered in the time prescribed, and after referring to that part of the preamble which suggests, that “marriage settlements have been frequently made, and kept secret, whereby the possessors upon their apparent property, have been enabled to contract great debts,” they came to the conclusion that “it was the intention-of the legislature, that as to his creditors the vesting of the property of the wife in the husband ‘jure mariti’ should not be prevented by secret agreement, whether written or verbal.” It is to be remarked that in' reciting the preamble, the court leave out entirely the words, “binding the estate oft the husband,” by which means, they give it a meaning entirely different from that which its words taken together, as they *484 are found in the statute, seem to us to indicate. We think, therefore, that the case is very much weakened as an authority; and ought not to control the decision of this cause now before the court.
The facts are very different; there the husband executed the articles and covenanted to make a settlement on the wife. The property vested in him by the marriage and became his estate, leaving the wife only an equitable right to have a settlement decreed by a court of chancery.
But the case is very different where the wife conveys her own property, before marriage, so that it does not vest in the husband by the marriage, or in any wise become his estate. Upon the most mature consideration of the cases reviewed in this opinion, we are satisfied that we ought not to depart from the principles decided in the case of Morgan vs. Elam. The facts of that case were substantially the same with this cause. The requirements of the Virginia law, upon the construction of which that case were decided, were couched in terms more comprehensive than our act of 1785. The decision, therefore, was a judicial declaration to women, situated as this lady was, that in order to protect their property from the creditors of their husbands, their anti-nuptial deeds of trust, need not be registered.
The case of Bishop vs. Hamilton, (8 Yerg. 33,) decided in 1835, indicated an adherence on the part of the court, to the case, Morgan vs. Elam. A decision of this court, defining and settling a rule of property, followed by a subsequent decision, and acquiesced in so long, ought not to be overruled, although the court might think it had erred in the first instance. It is suggested in argument, that the act of 1831, ch. 90,applies to this case. Itis not necessary to discuss the question as to the power of the legislature, by the introduction of a new rule of property to take away rights that had vested under the old rule.
It is sufficient, if it shall appear, that the legislature did not intend, that the act of 1831 should operate upon deeds that had been executed before its passage, and had vested a valid title to the property conveyed. The whole scope of the language used in the first section, is prospective, and the fifth section puts the question beyond doubt. It says, “marriage contracts or agreements, in which the wife’s property before marriage is settled on her, or on a trustee for her use,” “shall be registered in the county where the *485 husband resides at the time of the marriage; and should the husband move to any other county or counties in the State, it shall be registered in said county.”
Here, evidently, the act refers to marriages to take place after its passage. The deed is to be registered in the county where the husband resides at the time of the marriage. This is sensible, just and proper, if it refer to marriages to take place after the passage of the law. But to suppose it to refer to marriages that had theretofore taken place, would be to make the legislature require a very absurd thing. Suppose a marriage had taken place years before the passage of the law, and the parties had removed to a distant county, can any one suppose the legislature-intended to compel the party to go back where her husband had lived at the time of the marriage, and register her deed? Surely not.. But such is the requirement, if the act refer at all to deeds before its passage. But its language is in the present tense only. It says, the deed “shall be registered in the county where the husband resides,” not where he resided, when the deed was made, but where he resides when the transaction shall take place. As to the provision about registration in the county to which the husband shall remove, it is sufficient to remark, that it has reference to the same deeds, that by the preceding clause of the sentence were to be registered in the county where the husband resides at the time of the marriage. This is rendered too plain for argument by the provision that immediately follows: that “if the original be lost, a copy from the register’s book of the county, where first registered, shall be registered.” The twelfth section provides, that all marriage contracts not proved and registered, as required by the preceding sections of the act, shall be “null and void,” as to existing or subsequent “creditors of the husband.” Will it be supposed, that the legislature intended, that a deed which, before the passage of the act, was valid and vested the property in the grantee, should thus be declared void, as against existing creditors? If so, it would he void the very first hour of the day upon which the act went into operation, provided that there existed at that time creditors of the husband. Furthermore, if it has a retrospective meaning, all deeds registered and unregistered are declared void, if they had not been registered according to the provisions of this act, although proved and registered as the law at the time they were executed, directed.
*486 But no one will accuse the legislature of such an absurd purpose, and, therefore, it is clear, that the whole act has a prospective meaning and operation only. But it is said, the case of Hays vs. McGuire, (8 Yerg. 92,) recognizes the operation of the act of 1831 upon deeds executed before its passage. It is only necessary to say, in reference to that case, that it was a question between the parties to the deed. The court decided only, that the act of 1831, declared the unregistered deed void as to the existing and subsequent creditors and purchasers without notice, and that as between the parties it did not alter the law. No question, as to its operation upon previously existing deeds as tq creditors, was before the court.
We think, therefore, .that the act of 1831, has no application to this case; and that the deed of the 27 th of October, 1830, is valid as against the creditors of Henry Baldwin, although it was not proved and registered according to the provisions of the several acts of assembly requring the registration of deeds.
The cash in the hands of her guardian at the time of the marriage, has been so used and vested in property in his own name, by Henry Baldwin, with the knowledge and consent of the complainant, that it is conceded by her counsel, that she has no equity against the creditors of her husband.
But as to the negro slaves that remain in her possession, the court is of opinion she is entitled to a decree for a perpetual injunction.
Let the decree be affirmed.
Note. — The case of Saunders vs. Ferrill, referred to in the above case, will be fouhd in Iredell’s Law Reports, vol. 1, p. 97, reported by Battle.